```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

W. Scott Trafton

    v.                                   Civil No. 14-cv-155-JL
                                          Opinion No. 2014 DNH 249
H. Michael Koplove and
Lynda A. Koplove


**MEMORANDUM ORDER**

Relationships between in-laws are notoriously difficult, but relationships between former in-laws can be even more difficult-- particularly when money is involved.  This case, which raises a question as to the application of judicial estoppel, illustrates that point.  Plaintiff Scott Trafton was married to the daughter of defendants Michael and Lynda Koplove, who paid several hundred thousand dollars to have a home constructed for him and their daughter.  Though Trafton claims that he understood those funds as a gift to him and his wife, he (and she) nonetheless executed a promissory note, payable to the Koploves and secured by mortgages on the newly-built home and another property that Trafton owned going into the marriage.  That decision would come back to haunt him when his wife filed for divorce, and the Koploves noticed their intent to foreclose one of the mortgages due to the Traftons' failure to make payments on the note (even though, according to Trafton, they had actually rebuffed his attempts at payment).

Trafton responded to the notice by filing this action against the Koploves in Rockingham County Superior Court.  He advances a number of claims challenging the validity of the Koploves' note and mortgages and arguing that the Koploves may not foreclose.  The Koploves removed the action to this court, see 28 U.S.C. § 1441, which has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity), because Trafton is a New Hampshire citizen, the Koploves are Massachusetts citizens, and the amount in controversy exceeds $75,000.  The Koploves have now moved to dismiss the complaint, see Fed. R. Civ. P. 12(b)(6), arguing that Trafton's claims fail for a number of reasons.  Chief among these is that, in the divorce proceedings, Trafton acknowledged the existence of the loan and agreed to cooperate in the foreclosure, and the divorce court accepted these representations.  As a result, the Koploves say, Trafton should be judicially estopped from taking a contrary position in this case.  After carefully considering the parties' written submissions,[1] the court grants the motion for exactly that reason.

## I. **Applicable legal standard**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must allege facts sufficient to "state a

---

[1] After oral argument had been scheduled in this case, the parties informed the court that they did not want a hearing, so the court has decided the motion solely on the papers.

claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).  With the facts so construed, "questions of law [are] ripe for resolution at the pleadings stage." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009), including whether judicial estoppel operates to bar the plaintiff's claims, see, e.g., Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993).

## II. **Background**[2]

Trafton, as already mentioned, was previously married to the Koploves' daughter, Melanie.  Before Trafton and Melanie married, he owned a home in Dover, New Hampshire, where the couple was to

---

[2]As just noted, this background summary is drawn from the complaint and materials susceptible to judicial notice.  Although the parties' memoranda make a number of additional factual claims, the court cannot consider those claims in ruling on the motion, see, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig., 2004 DNH 047, 2-4, and has thus disregarded them.

reside after they wed. Soon after the Traftons married and their first child was born, however, the Koploves encouraged them to move to a larger home closer to the Koploves' own home in Amesbury, Massachusetts. Although Trafton believed he could not afford the move, the Koploves told him that they would give him and Melanie the money to purchase a larger home.

In early 2010, the Koploves paid a $10,000 deposit for a lot at 8 Terry's Way in Exeter, New Hampshire, and paid a builder $50,000 to begin building a home on the property. Later that year, the Koploves paid approximately $430,000 at a closing on the newly-constructed home, and a deed to the property was recorded in the names of Trafton and Melanie. At the closing, the Koploves also gave the Traftons additional funds. The plaintiff alleges that he understood all of these expenditures by the Koploves to be gifts. According to him, at no time was there any discussion about a loan relationship, and if there had been, he would have stayed in his home in Dover.

In late 2010, several months after the closing, Michael Koplove asked the plaintiff to come to the offices of law firm Ford and Associates, P.A. to "do some paperwork." There, the plaintiff was asked to sign a promissory note, payable to the Koploves, in the amount of $564,500, and two mortgages securing its payment: one on the Exeter property, and another on the Dover property (which the plaintiff still owned). Despite his

alleged understanding of the funds as "gifts," the plaintiff obliged.  Although Michael Koplove told the plaintiff not to worry about payment, and that the note and mortgages were just "paperwork," the plaintiff nevertheless attempted to make payments to the defendants, which they refused.  While Michael Koplove told Melanie to make out $1,000 checks to him, with rare exceptions, he did not cash them.

The Traftons' marriage was tempestuous, and Melanie filed for divorce three times.  On the last of these occasions, Melanie moved in with her parents, and the plaintiff also vacated the Exeter property.  In connection with this divorce proceeding, on January 17, 2014, Trafton and Melanie executed a stipulation as to the division of their marital assets and the resolution of other outstanding issues related to their divorce.  In relevant part, the stipulation, which was also witnessed by counsel for both parties to the divorce, provided:

> The marital home located at 8 Terry's Way, Exeter, New Hampshire is currently in foreclosure and has been vacated.  The parties shall cooperate with the lender to effectuate an auction or short sale of the property.

Trafton and Melanie submitted the stipulation to the 10th Circuit Court Family Division with a request that the court approve the stipulation "and incorporate all of its terms and conditions as part of the Decree of Divorce."  A week later, Trafton completed a financial affidavit affirming, under oath, that the Exeter property was encumbered by a debt in the amount of $564,000 owed

to Michael Koplove.  That affidavit was also submitted to the 10th Circuit Court, which approved the stipulation and entered a Decree of Divorce adopting and incorporating the stipulation's terms in their entirety in early February 2014.

Later that month, the Koploves notified Trafton of their intent to conduct a foreclosure auction of the Exeter property. Trafton responded by filing this action, in which he makes claims against the Koploves for fraudulent inducement, intentional and negligent misrepresentation, violation of the Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A, and breach of contract, and also asserts counts for injunctive relief and quiet title.[3]  The amended complaint seeks an order enjoining the Traftons from foreclosing, quieting title to the Dover and Exeter properties and discharging the mortgages on those properties, and awarding him damages for the Koploves' allegedly wrongful conduct.

---

[3]The amended complaint also names Melanie as a defendant, and includes a count captioned "Compel" that seeks relief against her.  Prior to removal, however, the Superior Court dismissed Melanie from the case with Trafton's assent, so the count against her is not before this court.

The defendants' motion suggests that the Superior Court also disposed of Trafton's claims for injunctive relief when, after a hearing on Trafton's motion for a preliminary injunction against foreclosure, it denied that motion on the basis that Trafton could "be adequately compensated by monetary damages."  Trafton disputes the defendants' reading of the Superior Court's order, and this court also questions that reading, so the court assumes that those claims live on (at least for present purposes).

### III. <u>Analysis</u>

As discussed at the outset, the Koploves' primary argument in support of their motion to dismiss is that Trafton is judicially estopped from advancing his claims challenging the validity of the note and mortgages, based upon his statements to the Circuit Court that the Exeter property was in fact encumbered by a mortgage and was in foreclosure.  The doctrine of judicial estoppel is intended to "safeguard the integrity of the courts" by "prevent[ing] a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same proceeding."  [Guay v. Burack](), 677 F.3d 10, 16 (1st Cir. 2012) (internal quotation marks omitted).

> There are two generally agreed-upon conditions for the application of judicial estoppel.  First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive.  Second, the responsible party must have succeeded in persuading a court to accept its earlier position.

Id. (internal quotation marks and citations omitted).[4]  The court agrees with the Koploves that both prerequisites are satisfied here, and that Trafton's claims must be dismissed as a result.

In the financial affidavit he submitted to the state court, Trafton attested that the Exeter property was encumbered by a debt of $564,000 owed to Michael Koplove.  In the stipulation he submitted to the same court, he acknowledged that the property was in foreclosure and agreed to "cooperate with the lender to effectuate an auction or short sale of the property."  These representations are in direct conflict with the positions Trafton now advances before this court, i.e., that the Koploves' purchase

---

[4] The parties' memoranda do not address whether federal or state law should apply in determining whether the doctrine of judicial estoppel applies in this diversity action, and both parties cite a combination of state and federal law.  Our Court of Appeals has not taken a definitive position on the issue, but it has suggested that federal law applies when determining the doctrine's applicability.  See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004).  Indeed, "every other federal appellate court to have considered the question has held that the application of judicial estoppel in diversity cases implicates a 'strong federal policy' warranting reference to federal, rather than state, principles." Flores-Febus v. MVM, Inc., -- F. Supp. 3d --, 2014 WL 4699085, *2 (D.P.R. Sept. 23, 2014) (citing cases).  This order follows suit.

The outcome would be the same, however, were the court to apply state, rather than federal, law.  New Hampshire law on the topic does differ from federal law inasmuch as it requires a showing that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  In re Carr, 156 N.H. 498, 502-03 (2007); compare Guay, 677 F.3d at 19 ("[U]nfair advantage is not a formal element of a claim of judicial estoppel.").  As discussed below, though, that element is present here.

of the Exeter property for the plaintiff and Melanie was a gift, not a loan, and that the mortgages are therefore unenforceable, through foreclosure or otherwise.  See Surreply (document no. 9) at 1-2 ("The gravamen of Plaintiff's amended complaint is that the underlying note is not enforceable and as a result of that this Court should order that the lien on the Exeter property, and, therefore, the Dover property, ought to be extinguished").

Trafton attempts to reconcile his statements to the Circuit Court with his position in this case, asserting that he "never took a position as to enforceability of the note in the divorce court."  Memo. in Supp. of Obj. to Mot. to Dismiss (document no. 6-1) at 4.  His affidavit, he says, simply represented that the note existed, but said nothing about whether, in his opinion, that document was valid.  That distinction is untenable, but, even if one credits Trafton's strained characterization of the affidavit, it is of no moment.  Whatever the merits of his attempt to distinguish a concession as to the existence of a debt from a concession as to its validity, Trafton also signed, and submitted to the Circuit Court, a stipulation (the existence of which his memoranda largely ignore) agreeing that the Koploves could foreclose the mortgage on the Exeter property, and that he would cooperate in that process.  In so doing, he represented to the court that the note, and the debt it evidenced, not only existed, but was valid and enforceable as well.  So the first

prerequisite for judicial estoppel, inconsistency in a party's prior and current positions, is satisfied here.

The second prerequisite is also satisfied, as the Circuit Court accepted Trafton's representation as to the enforceability of the note. Trafton also disputes this conclusion, maintaining that "the enforceability of the note" was not "a relevant issue to the divorce," so the Circuit Court had no occasion to take any position as to that issue. Pl.'s Surreply (document no. 9) at 2. Trafton correctly notes that the Circuit Court lacked authority to rule on the note's validity. See In re Muller, 164 N.H. 512, 517 (2013) (although "the family division has the authority to value and divide marital property," it does not have jurisdiction to invalidate a third party's mortgage on marital property). That the court could not and did not render an opinion on that issue, however, does not mean that it did not "accept" Trafton's representation as to the note's validity. See Pelletier v. U.S. Bank Nat'l Ass'n, 2013 DNH 162, 10-11 (fact that party's interest in note "was not--and could not have been--adjudicated" in court where representation was made did not preclude application of judicial estoppel to that issue).

To the contrary, for a party's earlier position to be "accepted" for purposes of judicial estoppel, all that is necessary is that the earlier court "adopted and relied on the represented position either in a preliminary matter or as part of

a final disposition." Perry v. Blum, 629 F.3d 1, 11 (1st Cir. 2010). That the Circuit Court "adopted and relied on" Trafton's earlier position is beyond question: as noted above, the divorce decree expressly incorporated the terms of the stipulation he signed. See Part II, supra.

This was not insignificant. In fulfilling its obligation to "order an equitable division of property between the parties" to the divorce, N.H. Rev. Stat. Ann. § 458:16-a, II, the Circuit Court would ordinarily take into account the value of the Exeter property in addition to the parties' other assets. See Muller, 164 N.H. at 518 ("the division of the net equity in a marital home subject to a mortgage . . . is within the statutory purview of the family division, as is the division of marital debt"). Had Trafton not agreed that the Exeter property was subject to a mortgage and in foreclosure, and that he would cooperate in that process, the Circuit Court would have done so here, treating the home as a marital asset. Based on Trafton's agreement, however, the court assigned no value to the property in dividing the marital estate, and allocated no interest in it to either spouse. So, contrary to Trafton's argument, the Circuit Court "accepted" his earlier position for purposes of judicial estoppel. Cf. Kale v. Obuchowski, 985 F.2d 360, 361-62 (7th Cir. 1993) (divorce court "accepted" party's position that he owned no interest in

industrial park when it approved settlement that allocated marital property, but made no mention of industrial park).

Although this case meets both prerequisites for judicial estoppel, Trafton nonetheless argues that the court should not apply the doctrine here for three additional reasons, none of which are availing.

First, he says that judicial estoppel cannot apply because the Koploves were not parties to the divorce.  See Memo. in Supp. of Obj. to Mot. to Dismiss (document no. 6-1) at 3.  The majority of courts hold, however, that doctrine applies whether or not the party invoking it was also a party to the proceeding in which the inconsistent position was advanced.  See 18 James Wm. Moore et al., Moore's Federal Practice § 134.33[1], at 134-77 & n.1 (3d ed. 2014) (citing cases).  To be sure, courts in the Fifth and Eleventh Circuits take the opposite view.  See id. at 134-77 & n.2.  Those courts appear to derive their alternative take on the issue from a 1968 case, Colonial Refrigerated Transp., Inc. v. Mitchell, 403 F.2d 541, 550 (5th Cir. 1968), in which the Court of Appeals for the Fifth Circuit held that "judicial estoppel may be invoked only by a party to the prior litigation or someone privy to a party" because the doctrine "is designed to protect those who are misled by a change in position."

As already noted above, though, the purpose of the doctrine is not, in fact, to protect litigants--it "is to safeguard the

integrity of the courts by preventing parties from improperly manipulating the machinery of the justice system." Guay, 677 F.3d at 16 (quoting Alternative Sys. Concepts, 374 F.3d at 33). Accordingly, as our Court of Appeals has recognized, judicial estoppel can apply even if a party's change in position causes no disadvantage to his adversary. Id. Because the minority rule relies on a premise that has been rejected by our Court of Appeals, this court declines to follow it.

Second, Trafton argues that judicial estoppel cannot apply because any statements he made to the Circuit Court regarding the validity of the note were legal conclusions, and "[j]udicial estoppel will not apply in cases in which only legal conclusions or opinions are involved." Surreply (document no. 9) at 3. The representations Trafton made to the Circuit Court, however, were not simply legal conclusions or opinions--they were also factual statements to the effect that the Exeter property had no value to the marital estate because it was encumbered by a mortgage that was about to be foreclosed upon. But even if Trafton's characterization of his representations to the Circuit Court is accepted, he is again incorrect: although "the 'classic' case of judicial estoppel" involves a litigant asserting "inconsistent statements of fact or . . . inconsistent positions on combined questions of fact and law," Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 214 (1st Cir. 1987), the doctrine also

"forbids a litigant to repudiate a legal position on which it has prevailed," Cont'l Illinois Corp. v. C.I.R., 998 F.2d 513, 518 (7th Cir. 1993); see also 18 Moore, supra, § 134.30 at 134-68 & n.8 (citing cases for the proposition that "the doctrine applies to preclude inconsistent legal assertions"). Indeed, this court has upheld the application of judicial estoppel based on a litigant's statement--like Trafton's--that another party held a mortgage on his property, rejecting the argument that this was a "legal conclusion" to which the doctrine could not apply. See Pelletier, 2013 DNH 162 at 11-12.

Finally, Trafton contends that the court should abstain from applying the doctrine here because he would not derive any unfair advantage from his changed position. If he is successful in this action, he says, he and his former wife can simply return to the Circuit Court and ask to have the divorce action reopened so their assets can be redistributed in light of what he calls the "newly discovered assets of the equity of the Exeter and Dover properties." Surreply (document no. 3) at 3. So, he says, "the result of this case will not only be fair to Melanie, it will be a benefit to her." Memo. in Supp. of Obj. to Mot. to Dismiss (document no. 6-1) at 5 (emphasis in original).

The court doubts the feasibility of Trafton's suggested procedure: "[a] property settlement in a divorce decree is a final distribution of a sum of money or a specific portion of the

spouses' property and is not subject to judicial modification" unless it is shown "that the distribution is invalid due to fraud, undue influence, deceit, misrepresentation, or mutual mistake," Sommers v. Sommers, 143 N.H. 686, 689 (1999), none of which would appear to be present here.  Even if it were possible for the parties to reopen the divorce, the Circuit Court is charged with equitably (rather than equally) dividing the assets of the marital estate, in accordance with a host of specific factors.  See N.H. Rev. Stat. Ann. § 458:16-a.  Reopening the divorce proceeding would, therefore, be no small task.  It would require the Circuit Court to start over from scratch, reweighing the equities, and even potentially redistributing property from one party to another.  The court fails to see how this result would be "fair" to Melanie, who would likely have to retain counsel once again to represent her in the reopened proceeding (despite her entry into a stipulation with Trafton that purported to distribute all assets of the estate and resolve all issues related to the divorce).

In any event, although one of the factors courts frequently consider in determining whether to apply judicial estoppel is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party," the Court of Appeals, as already mentioned, "generally ha[s] not required a showing of unfair advantage" as a

prerequisite to the application of the doctrine.  Guay, 677 F.3d at 16 (citing cases); see also id. at 19 ("[U]nfair advantage is not a formal element of a claim of judicial estoppel.").  So the presence or absence of an unfair advantage to Trafton as a result of his change in positions does not affect the outcome.

In sum, "[h]aving won a favorable allocation of property in the divorce case" by agreeing that he would cooperate with the foreclosure of the Exeter property, Trafton "is stuck with that proposition in subsequent litigation."  Kale, 985 F.2d at 362.  His claims are barred by the doctrine of judicial estoppel, and must be dismissed.[5]

### IV.  Conclusion

For the reasons set forth above, the defendants' motion to dismiss[6] is GRANTED.  The clerk shall enter judgment accordingly and close the case.[7]

---

[5]Trafton's memoranda do not differentiate between his claims, and appear to concede that if the doctrine of judicial estoppel applies in this case, it bars all of those claims.  The court has, therefore, proceeded on that assumption, and has not attempted to make an independent determination of whether the doctrine might bar some of Trafton's claims, but not others.  In light of its conclusion that the doctrine applies here, the court also has not addressed the other arguments the Koploves advance in their motion to dismiss.

[6]Document no. 3.

[7]Trafton's counsel is reminded that under Local Rule 5.1(a), filings must "be double spaced except for quoted material."  Neither of Trafton's memoranda comply with this rule.  Because Trafton does not appear to have derived any unearned advantage

**SO ORDERED.**

/s/ Joe Laplante
_____
Joseph N. Laplante
United States District Judge

Dated:   December 3, 2014

cc:   Jonathan M. Flagg, Esq.
      Richard K. McPartlin, Esq.
      Edmond J. Ford, Esq.

---

from his deviation from the rule, the court will take no remedial action, but counsel is advised that the court expects adherence to all applicable rules of procedure in the future.